AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

**LODGED**
CLERK, U.S. DISTRICT COURT
02/07/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ASI _____ DEPTUY

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
2/07/25
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MR _____ DEPUTY

United States of America,

　　　　Plaintiff,

　　v.

JINLONG REN,

　　　　Defendant.

Case No.   2:25-mj-00568-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

　　　I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of February 6, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(a)(7) | Telecommunications device fraud |

This criminal complaint is based on these facts:

　*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Ryan Ribner*
_____
*Complainant's signature*

RYAN RIBNER, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   February 7, 2025

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Khaldoun Shobaki (x0759)

**AFFIDAVIT**

I, Ryan Ribner, being duly sworn, declare and state as follows:

## I.    PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint and arrest warrant against **JINLONG REN** for knowingly and with intent to defraud possessing a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services in violation of Title 18, United States Code, Section 1029(a)(7).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only and all dates, times, and dollar amounts are approximate.

## II.    BACKGROUND OF AGENT

3.    I am a Supervisory Special Agent with the Department of Homeland Security (DHS) United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI).  I am currently assigned to the Los Angeles, California office where I supervise the Cyber Financial investigative group.  I have been

1

employed by HSI since 2009, and have been assigned to HSI Casa
Grande, Arizona, HSI Attaché Montreal, Canada, and the HSI
Chicago, Illinois Office.  Prior to my employment with HSI, I
was employed as a police officer for the Oak Park Police
Department, Forest View Police Department, and the Burlington
Northern Santa Fe Railroad Police.  In connection with my
official duties I have personally conducted, managed, and
participated in investigations which have resulted in the arrest
and prosecution of several individuals for various crimes to
include money laundering, identity theft, human smuggling,
narcotics trafficking and fraud.  I have seized currency and
assets based on various specified unlawful acts.  I have also
been the lead case investigator on several domestic and
international cases which have successfully dismantled trans-
national criminal organizations.  I hold a certificate as a
certified anti-money laundering specialist ("CAMS"), from the
Association of Anti-Money Laundering Specialists ("ACAMS"), a
graduate certificate in Intelligence Operations from the
Michigan State University, a Master of Arts degree from Webster
University, and a Bachelor of Arts degree from the University of
Michigan.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

4.    Based on records, witness interviews, my review of
electronic communications, and my knowledge of this
investigation, I know the following:

5.    On January 23, 2025, representatives of Verizon
contacted HSI in connection with a complaint received from one

of Verizon's customers (hereinafter "the Bank").[1]  The Bank
reported that numerous bank customers were receiving "smishing"
messages from Verizon mobile phone numbers.

6.    I know from my training and experience that smishing
is a technique whereby a fraudulent message is sent to a phone
purporting to come from a legitimate sender.  Smishing messages
typically contain a message indicating some urgent matter or an
alert, and a link to website (for example, a bank login page)
that appears to be genuine but is actually a fraudulent mock-up
of the real bank login page. These false pages are designed to
steal login credentials and allow the sender of the smishing
message to gain access to the victim accounts for nefarious
purposes.

7.    The Bank identified approximately 60 telephone numbers
that were being used to target its customers.  Verizon, in turn,
informed HSI that at least six of those telephone numbers were
originating from the San Gabriel Valley area of Los Angeles,
within the Central District of California.  Verizon also
informed HSI that the six numbers appeared to be originating
from what they suspected to be devices known as SMS gateways (or
"SIM boxes").

a.    Based on my training and experience, I know that
SMS gateways are a type of telecommunications device used to
facilitate the mass sending of phishing messages in the U.S.
SMS gateways are designed to facilitate the bulk sending and

---

[1] The victim is a major U.S. financial institution whose
identity is known to HSI but not included here to protect the
victim's privacy when this affidavit becomes public.

receiving of text messages. SMS gateways operate by emulating hundreds of cell phone numbers by holding between 8 to 512 Subscriber Identity Module ("SIM") cards.[2]  SMS gateways can be networked together and allow the remote sending and receiving of text messages.  While there are some commercial grade SMS gateways that are certified by the Federal Communications Commission ("FCC") for operation in the U.S., I know that there are many such SMS gateways with no FCC certification that are not permitted to be imported or operated in the U.S. by federal communication laws and regulations.

b.    Despite U.S. law and regulations, I am aware that companies outside the U.S. manufacture and market unlicensed SMS gateways for surreptitious importation into the United States. Public product listings for such SMS gateways commonly advertise that the devices have advanced features to avoid detection and blocking by cellular carriers.  HSI has previously conducted undercover purchases of unlicensed SMS gateways from foreign suppliers and confirmed that they do indeed operate in a manner designed to evade detection by carriers.  As such, although these devices contain legitimate cellular communications chips, the hardware and software has been modified to enable users to use telecommunications services in an unauthorized manner, in violation of 18 U.S.C. § 1029(a)(7).

---

[2] SIMs are smart cards primarily used with mobile devices that store the International Mobile Subscriber Identity ("IMSI") number, security authentication and ciphering information, phone carrier network information, and limited user data.

8.   On January 28, 2025, Verizon provided HSI with approximately 3,000 phone numbers and the corresponding IMSIs that Verizon determined were used in connection with the suspected SMS gateway devices in the San Gabriel Valley that were sending the Bank's customers smishing messages.

9.   On February 4, 2025, pursuant to a federal warrant, HSI agents used a cell-site simulator device to identify four locations where suspected SMS gateway devices that targeted the Bank's customers were operating.  One of those locations was a residence in Montebello (the "Montebello Residence").

10.  On February 6, 2025 at approximately 6:10 a.m. HSI agents executed a federal search warrant on the Montebello Residence.  Among other things, fourteen operating SMS gateway devices, pictured below, were found:



11.  Five people, including **REN**, were present at the home.

12.  **REN** was advised of his <u>Miranda</u> rights with the assistance of a Mandarin-speaking law enforcement agent and consented to an interview.  Among other things, **REN** stated the following:

      a.  He is a People's Republic of China ("PRC") national,[3] and that he entered the U.S. from Mexico in or about August 2024 at an unknown location after paying to be smuggled into the U.S. from Mexico.

      b.  He lives at the Montebello Residence.

      c.  He owned the SMS gateway devices and claimed that they are part of a business whereby he earns $0.01 for each text message sent using the devices.

      d.  He claimed that he didn't know the contents of messages that were sent using the SMS gateways.

      e.  He acknowledged that a laptop found in the home was a computer that he used in connection with operating the SMS gateways.

13.  Pursuant to the search warrant, I conducted a brief review of the laptop computer and found a series of Skype chats discussing installing SIM cards in SMS gateway devices, configuring those devices, changing numbers, and virtual currency payments.  The chats also discussed "workers" in the PRC in connection with the operation of the SMS gateway devices.

---

[3] During the search of the Montebello Residence, agents seized a People's Republic of China passport in REN's name.

14.    In the room where the laptop computer was found, agents also found two credit card reader machines, several blank stock credit cards, a point-of-sale card reader.

## VI.    CONCLUSION

39.    Based on my training and experience, there is probable cause to believe that **REN** possessed and operated the SMS gateways at the Montebello Residence and sent smishing message to the Bank's customers as part of a fraud scheme.


Attested to by the applicant
In accordance with the requirements
Of Fed. R. Crim. P. 4.1 by
Telephone on this 7th day of
February, 2025.

_____
THE HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE